**Alfred PECHA, BY AND THROUGH Patty PECHA–WEBER, Next Friend and attorney-in-fact, Plaintiff–Appellant,**

v.

**Ed LAKE, Director of Oklahoma Department of Human Services; Joel Nico Gomez, Director of Oklahoma Health Care Authority, Defendants–Appellees.**

No. 16–6143

United States Court of Appeals, Tenth Circuit.

July 25, 2017

(D.C. No. 5:14–CV–01356–R) (W.D. Oklahoma)

Jaclyn Piper Bowers, Katresa Jo Riffel, Michael Craig Riffel, Riffel Law Firm, Enid, OK, for Plaintiff–Appellant.

John Dewey, Travis Smith, Ph. D., Oklahoma Department of Human Services Office of General Counsel, Joseph H. Young, Oklahoma Health Care Authority, Oklahoma City, OK, for Defendants–Appellees.

Before BRISCOE, HARTZ, and HOLMES, Circuit Judges.

### ORDER AND JUDGMENT *

JEROME A. HOLMES, Circuit Judge

This case presents the question of whether a plaintiff's death moots his request for an injunction ordering certain officials of the State of Oklahoma to determine him eligible for Medicaid benefits. We answer yes. The claim for injunctive—that is, prospective—relief is moot because there is no concrete threat of a continuing or repeated injury to the plaintiff-appellant, Alfred Pecha, because he is dead. Any harm to Mr. Pecha lies squarely in the past.

Mr. Pecha's attorney-in-fact, his niece, Patty Pecha–Weber, argues on appeal that Mr. Pecha's death does not moot his claim for injunctive relief. She further argues for an order for an award of retrospective Medicaid benefits under 42 U.S.C. § 1396a(a)(34). However, because we determine that Mr. Pecha's claim for prospective injunctive relief is moot and Ms.

---

* This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

Pecha–Weber concedes that any order of retrospective benefits must be ancillary to such prospective relief, we can find no error in the district court's dismissal of the case. Accordingly, we **affirm** the district court's judgment.

# I

Mr. Pecha initially applied for Medicaid benefits in early July 2014. Acting on Mr. Pecha's behalf in that administrative matter—and throughout his subsequent judicial quest for Medicaid benefits—has been Patty Pecha–Weber, Mr. Pecha's niece, whom Mr. Pecha appointed his attorney-in-fact in February 2011. After Mr. Pecha failed to obtain a determination of his eligibility for benefits, he brought suit in the United States District Court for the Western District of Oklahoma alleging a failure to timely provide such a determination. Specifically, invoking 42 U.S.C. § 1983, Mr. Pecha sued Ed Lake, the Director of the Oklahoma Department of Human Services (OKDHS), and Joel Nico Gomez, Director of the Oklahoma Health Care Authority (OHCA) (collectively "Defendants–Appellees"). As reflected in his amended complaint, he requested both injunctive and related declaratory relief. The requested injunction would have required both that Defendants–Appellees certify Mr. Pecha as eligible for Medicaid benefits

and that the State pay three months' retrospective Medicaid benefits.[1]

On July 21, 2015, the district court granted in part and denied in part the Defendants–Appellees' initial motions to dismiss. The court dismissed Mr. Pecha's claim for a declaratory judgment on the basis of Eleventh Amendment immunity. However, the court ruled that the payment of three months' retrospective benefits could be ordered and "would not run afoul of the Eleventh Amendment in light of 42 U.S.C. § 1396a(a)(34)."[2] Aplees.' Supp. App. at 6 (Order, filed July 21, 2015). The court permitted Mr. Pecha's claim for injunctive relief to go forward.

Mr. Pecha died on March 6, 2016. The Defendants–Appellees subsequently filed a suggestion of mootness and a motion to dismiss. In her response brief, in addition to arguing that the case was not moot, Ms. Pecha–Weber—whom a state court in April 2016 had appointed the personal representative of Mr. Pecha's estate—sought to substitute herself and Mr. Pecha's estate as the plaintiff. The district court, however, dismissed the action concluding that "the death of Mr. Pecha renders prospective injunctive relief impossible and therefore, the incidental back benefits sought cannot be tied to any prospective injunctive relief." Aplt.'s App. at 469 (Order, filed May 18, 2016). Though it did not explicitly address the matter, the court's

---

1. While Mr. Pecha's suit was pending, on January 9, 2015, OKDHS denied his application, determining that he was ineligible for Medicaid benefits. The basis for the denial was that Mr. Pecha had disposed of various parcels of real estate to fund a trust and was unable to actively participate in farming on his remaining property; consequently, he allegedly could not claim an exemption as to that property.

2. The relevant paragraph of this statute requires state Medicaid plans to

provide that in the case of any individual who has been determined to be eligible for medical assistance under the plan, such assistance will be made available to him for care and services included under the plan and furnished in or after the third month before the month in which he made application (or application was made on his behalf in the case of a deceased individual) for such assistance if such individual was (or upon application would have been) eligible for such assistance at the time such care and services were furnished . . . .

42 U.S.C. § 1396a(a)(34).

dismissal of the action effectively denied Ms. Pecha–Weber's motion to substitute parties.

Ms. Pecha–Weber—in her role as attorney-in-fact—now appeals, arguing that prospective relief is still possible in the form of an injunction requiring the Defendants–Appellees to determine posthumously that Mr. Pecha was eligible for Medicaid benefits. Such prospective relief would in turn permit the district court to enter an order for the payment of retrospective Medicaid benefits under 42 U.S.C. § 1396a(a)(34).

Notably, Ms. Pecha–Weber does not argue on appeal that the district court erred by failing to grant her motion to substitute. Nor has she sought to substitute herself on appeal as plaintiff-appellant, in her role as personal representative of Mr. Pecha's estate, by filing a motion under Fed. R. App. P. 43(a). Thus we conduct our analysis as though Mr. Pecha were the sole plaintiff before us; any contrary argument that Ms. Pecha–Weber could have (but has not) raised is waived. *See, e.g.,*

*Kannady v. City of Kiowa,* 590 F.3d 1161, 1175 (10th Cir. 2010); *United States v. Abdenbi,* 361 F.3d 1282, 1289 (10th Cir. 2004). Consequently, as she did before the district court, Ms. Pecha–Weber litigates this appeal solely as the attorney-in-fact of Mr. Pecha. And, significantly, Defendants–Appellees do not question her authority to do so. *Cf. Bush v. Remington Rand,* 213 F.2d 456, 464 (2d Cir. 1954) (concluding that "the defendant, by its long delay in raising the issue, had waived its right to object" to failure to substitute in the district court a proper party-plaintiff upon plaintiff's death).[3] With the stage thus set, we turn to the central question of whether Mr. Pecha's death mooted this case, and answer in the affirmative.[4]

## II

"[W]e apply a de novo standard of review because the case presents a question of constitutional mootness." *Rio Grande Silvery Minnow v. Bureau of Reclamation,* 601 F.3d 1096, 1123 (10th Cir. 2010). Similarly, we review de novo issues of

---

**3.** We need not consider whether ordinarily it would be advisable or even required for us to dismiss on our own initiative this appeal based on the arguable absence of a proper plaintiff-appellant—stemming from Mr. Pecha's death and Ms. Pecha–Weber's failure to move for substitution of herself, as personal representative of the estate, under Federal Rule of Appellate Procedure 43—because, ultimately, the resolution of this non-merits question is not material: even if a dismissal of this action could be appropriately based on this lack-of-proper-party ground, we may elect to determine this case on the alternative non-merits, jurisdictional basis of mootness. Federal courts have flexibility in electing among non-merits grounds for ruling on cases. *See, e.g., Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 431, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (quoting *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S.

574, 585, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999))); *accord Kelley v. City of Albuquerque,* 542 F.3d 802, 817 n.15 (10th Cir. 2008). And whether we dismiss for lack of a proper plaintiff-appellant *or* resolve this case on mootness grounds, we never reach the merits of this action seeking a determination of Medicaid eligibility and the payment of three months' retrospective Medicaid benefits.

**4.** We will not ruminate or opine on whether the outcome would have been different if Mr. Pecha's estate (with Ms. Pecha–Weber as personal representative) was the plaintiff-appellant. It is not. And we are not "empowered to issue" advisory opinions. *McKinney v. Gannett Co.,* 694 F.2d 1240, 1247 (10th Cir. 1982) ("Under the circumstances with which we are now confronted, were we to opt to address the allegations of error raised herein, we would surely be rendering an advisory opinion, which federal courts are not empowered to issue.").

sovereign immunity. *See, e.g., Governor of Kan. v. Kempthorne*, 516 F.3d 833, 841 (10th Cir. 2008).

**A**

■ Ms. Pecha–Weber argues that the claim for an injunction to oblige Defendants–Appellees to declare Mr. Pecha eligible for Medicaid benefits is not mooted by his death. She argues that "[t]he District Court erroneously equated prospective injunctive relief to the payment of *future* Medicaid benefits." Aplt.'s Opening Br. at 5 (emphasis added). Instead, Ms. Pecha–Weber posits that the prospective relief she seeks is "an injunction ordering" the Defendants–Appellees "to cease denying [Mr. Pecha's] Medicaid application and coverage." *Id.* at 26. That prospective relief would in turn "allow[ ] Pecha to receive *past* Medicaid benefits pursuant to 42 U.S.C. § 1396(a)(34) as relief ancillary to and in furtherance of the injunction." *Id.* at 6 (emphasis added). The Defendants–Appellees respond that the district court did not err because Mr. Pecha's death moots his claim for prospective relief; consequently, in their view, no ancillary relief can be awarded.

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande Silvery Minnow*, 601 F.3d at 1109 (quoting *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005)).[5] The constitutional aspect of the mootness doctrine, at issue here, is related to the standing doctrine. Mootness is essentially "the doctrine of standing set in a time frame: The requisite personal interest that must

exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)).

The relevant inquiry for a question of constitutional mootness is "have circumstances changed since the beginning of litigation that forestall any occasion for meaningful relief." *Id.* Put differently, to moot a case, "interim relief or events [must] have completely and irrevocably eradicated the *effects* of the alleged violation." *Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1491 (10th Cir. 1993) (emphasis added) (quoting *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)).

Where a plaintiff seeks prospective equitable relief, such as an injunction, we have recognized that, for purposes of the mootness inquiry, "a mere showing that he maintains a personal stake in the outcome of the controversy is insufficient." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any *continuing*, present adverse effects." *Id.* (omission in original) (emphasis added) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). Specifically, the plaintiff must show "susceptibility to *continuing* injury," *id.*, or a "likelihood of substantial and immediate irreparable injury," *id.* (quoting *O'Shea*, 414 U.S. at 499, 94 S.Ct. 669); *see Citizen Ctr. v. Gessler*, 770 F.3d 900,

---

5. In addition to the constitutional dimension of mootness, which stems from Article III of the U.S. Constitution, there is a prudential dimension, which relates to the prudence—or, more precisely, the possible lack thereof—of

granting relief in a particularly attenuated case where concerns of comity arise. *See Jordan v. Sosa*, 654 F.3d 1012, 1023–24 (10th Cir. 2011). Our concern here is only the threshold, constitutional aspect of mootness.

906 (10th Cir. 2014) ("Because Citizen Center seeks only prospective equitable relief, past exposure to illegal conduct would not establish a live controversy in the absence of *continuing ill effects.*" (emphasis added)); *Beattie v. United States*, 949 F.2d 1092, 1093 (10th Cir. 1991) ("[W]hile a plaintiff who has been constitutionally injured can bring a[n] ... action to recover damages, that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise *injured in the future.*" (omission and second alteration in original) (emphasis added) (quoting *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991))); *see also Randolph v. Rodgers*, 170 F.3d 850, 856 (8th Cir. 1999) ("A claim for equitable relief is moot 'absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any *real or immediate threat* that the plaintiff will be *wronged again.*'" (emphases added) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983))).

It is beyond peradventure that the dead are not susceptible to continuing or future harm; therefore, claims for prospective (e.g., injunctive) relief brought by deceased plaintiffs ordinarily are moot. *See, e.g., Tandy v. City of Wichita*, 380 F.3d 1277, 1290 (10th Cir. 2004) ("Beltz's claims for prospective relief are moot because he has died. ... [O]nce dead, he is no longer under a real and immediate threat of repeated injury. Thus, there is no longer a live controversy with respect to Beltz's claims for prospective relief."). *Tandy's* holding leads ineluctably to the termination of this litigation. That is, Mr. Pecha's death has mooted this case, which is based on claims for prospective relief—notably, for purposes of this appeal, a claim for injunctive relief.[6]

Ms. Pecha–Weber's contention that this case is not moot rests, in principal part, on the assertion that there is an ongoing violation of federal law here—a requisite of an action for prospective equitable relief (e.g., injunctive relief) against state officials. *See, e.g., Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) ("In determining whether the doctrine of *Ex parte Young*[7] avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" (alteration in original) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judg-

---

**6.** Although Mr. Pecha included in his complaint and amended complaint a request for a declaratory judgment, it is unnecessary to discuss or analyze whether a declaratory judgment would be available to Mr. Pecha because Ms. Pecha–Weber does not challenge the district court's dismissal of Mr. Pecha's claim for a declaratory judgment. Ms. Pecha–Weber fails to make any argument regarding declaratory relief in her opening brief (or her reply brief for that matter). Indeed, the court's order that dismissed Mr. Pecha's declaratory-judgment claim was omitted from Ms. Pecha–Weber's appendix and is in the record on appeal only because the Defen-

dants–Appellees submitted it to us in a supplemental appendix. *See* Aplees.' Supp. App. at 1 (Order, filed July 21, 2015). "The failure to raise an issue in an opening brief waives that issue." *Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005); *accord Silverton Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 783 (10th Cir. 2006). Therefore, even if Ms. Pecha–Weber did profess to be challenging the court's denial of declaratory relief, such a challenge would be waived.

**7.** *See Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

ment))); *accord Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012). Ms. Pecha–Weber views the purported existence of such an ongoing (i.e., continuing) violation as a basis for distinguishing *Tandy*. She says that, unlike in this case, in *Tandy* no continuing *violation* of federal law could occur because the city of Wichita's violation of the Americans with Disabilities Act (ADA) "occurred each time Beltz used [the] transit system," Aplt.'s Reply Br. at 3, and he could not use it after his death.

However, even if the existence of an ongoing violation of federal law were material to the resolution of this action (which it is not, as explicated *infra* ), Ms. Pecha–Weber's attempt to distinguish *Tandy* on this basis would be mistaken. The violation of law that the plaintiffs alleged in *Tandy* was, *inter alia*, Wichita's "*continued use* of its *policy* of giving drivers the discretion to deny wheelchair-bound passengers access to an accessible bus on an inaccessible route." 380 F.3d at 1280 (emphases added). They "reason[ed] that this *policy* violates the ADA." *Id.* (emphasis added) (describing the district court's entry of an injunction under this reasoning). In other words, the *Tandy* plaintiffs alleged that Wichita's existing policy was noncompliant with the ADA—a violation of law independent of whether any particular plaintiff was able to attempt to ride the buses. Thus, instead of focusing on the bus-riding conduct of one individual, the *Tandy* plaintiffs centered their challenge on an existing policy that they believed represented a continuing violation of federal law. Therefore, Ms. Pecha–Weber's attempt to distinguish *Tandy* for its ostensible lack of a continuing violation is mistaken.

More importantly, the existence of a continuing (i.e., ongoing) violation of federal law is immaterial to the resolution of

this case. Irrespective of whether there is such a violation here, Mr. Pecha's action still has to pursue "relief properly characterized as prospective," *Verizon Md. Inc.*, 535 U.S. at 645, 122 S.Ct. 1753 (quoting *Coeur d'Alene Tribe*, 521 U.S. at 296, 117 S.Ct. 2028 (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)), in the sense that it seeks to remedy a "*continuing* injury" to him, *Jordan*, 654 F.3d at 1024. And *Tandy* forcefully underscores what commonsense should already tell us: the dead, like Mr. Pecha, cannot suffer a continuing injury. Therefore, this action for injunctive (i.e., prospective) relief is moot.

**B**

■ Because of this conclusion regarding the mootness of Mr. Pecha's claim for injunctive relief, Ms. Pecha–Weber cannot secure any other relief in this appeal. Ms. Pecha–Weber acknowledges that she ultimately seeks a district court order for the payment of *retrospective* Medicaid benefits under 42 U.S.C. § 1396a(a)(34); she characterizes this relief as ancillary to her requested prospective relief and so permissible under *Ex parte Young.* See Aplt.'s Opening Br. at 17–19.

Retrospective relief against a state is barred by the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) ("In *Edelman*[8] we reaffirmed the rule that ... a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. ... [U]nder the landmark decision in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their

---

8. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury. The distinction between [the two] was the difference between prospective relief on one hand and retrospective relief on the other." (citations omitted)); *accord Buchheit v. Green,* 705 F.3d 1157, 1159 (10th Cir. 2012).

The Supreme Court has approved of some forms of relief against a state that it has characterized as ancillary to prospective (e.g., injunctive) relief. *See Quern,* 440 U.S. at 349, 99 S.Ct. 1139 (approving the issuance of a notice "ancillary to ... prospective relief" that "in effect simply informs class members that their federal suit is at an end, that the federal court can provide them with no further relief, and that there are existing state administrative procedures which they may wish to pursue. ... The class members are 'given no more ... than what they would have gathered by sitting in the courtroom.'" (second omission in original) (quoting *Jordan v. Trainor,* 563 F.2d 873, 877–78 (7th Cir. 1977))).

But the problem for Ms. Pecha–Weber is that, even if this court were willing to assume that her requested order for retrospective benefits under 42 U.S.C. § 1396a(a)(34) could be characterized as ancillary to an injunction obliging the Defendants–Appellees to declare Mr. Pecha eligible for Medicaid benefits, such injunctive relief—as demonstrated *supra*—is not possible. Therefore, Mr. Pecha's claim for retrospective benefits stands untethered to

a claim for injunctive (i.e., prospective) relief. In other words, there is no injunctive relief to which the claim for retrospective benefits can be ancillary. Therefore, Ms. Pecha–Weber's claim for retrospective benefits as ancillary relief must fail for want of a prospective predicate.

Indeed, Ms. Pecha–Weber concedes that she cannot obtain the payment of past Medicaid benefits *unless* it is ancillary to prospective injunctive relief ordering the Defendants–Appellees to determine Mr. Pecha to have been eligible for Medicaid benefits: "OKDHS and OHCA cited *Green v. Mansour,* 474 U.S. 64, 67, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) for the proposition that ancillary relief cannot be awarded independent of prospective injunctive relief. *Pecha agrees.* In order to receive ancillary relief, he must be entitled to receive prospective injunctive relief." Aplt.'s Reply Br. at 5 (emphasis added).[9]

Ms. Pecha–Weber's concession is determinative regarding whether an order of retrospective Medicaid benefits can survive the mooting of Mr. Pecha's claim for prospective relief. It cannot. Mr. Pecha's death mooted any claim for injunctive (i.e., prospective) relief. Thus, Ms. Pecha–Weber cannot seek ancillary retrospective benefits. The foregoing analysis disposes of this case.

## III

In sum, this action for injunctive (i.e., prospective) relief is moot because Mr. Pecha does not face a concrete threat of

9. The Court's *Green* decision—which Ms. Pecha–Weber identifies—clearly underscores the point. Specifically, it held that ancillary relief generally cannot be awarded independent of prospective relief, *see* 474 U.S. at 71–72, 106 S.Ct. 423—unless the requested relief may *also* be characterized as an "independent form of relief," *id.* at 71, 106 S.Ct. 423, that is able to "stand on its own feet as an appropri-

ate exercise of federal jurisdiction," *id.* at 74, 106 S.Ct. 423, consistent with the Eleventh Amendment. Ms. Pecha–Weber has not attempted to establish that the order of retrospective benefits she seeks stands on its own feet as an independent form of relief valid under the Eleventh Amendment. Therefore, we have no occasion to explore that possibility here.

continuing or repeated injury to him because he is dead. This conclusion in turn bars relief in the form of retrospective benefits, which Ms. Pecha–Weber characterizes as ancillary to the requested injunction. We **AFFIRM** the district court's judgment.