**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

THE ESTATE OF VELMA LEA
SCHULTZ,

      Plaintiff - Appellant,

v.

JUSTIN BROWN, Director of the
Oklahoma Department of Human Services;
KEVIN CORBETT, Chief Executive
Officer of the Oklahoma Health Care
Authority,

      Defendants - Appellees.

No. 20-6079
(D.C. No. 5:19-CV-00217-JD)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **HOLMES**, and **PHILLIPS**, Circuit Judges.
_____

The Estate of Velma Schultz appeals the dismissal of its lawsuit challenging

Oklahoma's Medicaid appeals process. For the reasons below, we affirm.

**BACKGROUND**

After the Oklahoma Department of Human Services (DHS) denied Velma

Schultz's application for Medicaid benefits, Schultz appealed the decision to a DHS

hearing officer. Unfortunately, Schultz died while her appeal was pending. About two

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

months after her death, the hearing officer reversed DHS's decision. When DHS appealed the hearing officer's decision to the DHS Director, Schultz's Estate filed this case in federal district court against the Director and the head of another agency that administers Oklahoma's Medicaid program, the Oklahoma Health Care Authority (collectively, Defendants).

The Estate's suit challenges the validity of Oklahoma's process for reviewing denied Medicaid applications. The challenge centers on a federal requirement that Medicaid review hearings like Schultz's "be conducted . . . [b]y one or more impartial officials . . . who have not been directly involved in the initial determination" of an applicant's eligibility for benefits. 42 C.F.R. § 431.240(a)(3). According to the Estate, Oklahoma's review process violates that requirement because the same DHS official who makes the initial Medicaid eligibility determination also represents DHS at the hearing, supervises the hearing officer, and helps the Director draft opinions reviewing the hearing officer's decisions. By subjecting Schultz to this purportedly biased system, the Estate alleged, Defendants violated her right under federal law to a fair hearing. To remedy that violation, the Estate seeks (1) an injunction ordering Defendants to end their appeal of the hearing officer's decision and to "implement an impartial hearing system," and (2) a declaration that Defendants "have violated and continue to violate federal law." App. 13.

Within weeks of the Estate's federal lawsuit, the Director reversed the hearing officer's decision and remanded for a new hearing. The hearing officer then reversed

2

its earlier decision, this time finding that DHS properly denied Schultz's application. About one year later, the district court dismissed the Estate's complaint for two reasons: (1) Defendants were immune from suit under the Eleventh Amendment, and (2) Schultz's death mooted the case and deprived the court of jurisdiction under Article III of the U.S. Constitution. The Estate appeals.

## DISCUSSION

The Estate disputes both grounds on which the district court dismissed the complaint. We address those grounds in turn, reviewing the district court's decision de novo. *Collins v. Daniels*, 916 F.3d 1302, 1315 (10th Cir. 2019) (noting de novo review of sovereign-immunity issues); *Brown v. Buhman*, 822 F.3d 1151, 1168 (10th Cir. 2016) (stating that we review Article III jurisdictional issues de novo).

The Estate first challenges the district court's determination that the Eleventh Amendment bars the Estate's claims against Defendants. The Eleventh Amendment generally precludes federal courts from hearing cases against state officials acting in their official capacities. *Collins*, 916 F.3d at 1315. But as it did in the district court, the Estate invokes an exception to this rule from *Ex parte Young*, 209 U.S. 123 (1908). Under this exception, federal courts may hear cases against state officials for prospective relief to remedy ongoing violations of federal law. *Hill v. Kemp*, 478 F.3d 1236, 1255–56, 1259 (10th Cir. 2007). By contrast, the exception does not apply to retrospective relief aimed at remedying past wrongs. *See id.* at 1259–60. We

3

examine each form of relief the Estate seeks with this distinction in mind.[1]

At the outset, some relief the Estate requests is plainly retrospective. For example, the complaint seeks a declaration that Defendants "have violated" Schultz's right to a fair hearing under federal law. App. 13. *Ex parte Young* does not cover declarations that a state official's past conduct violated a plaintiff's rights. *Collins*, 916 F.3d at 1316. Nor does it cover the Estate's demand for an injunction ordering Defendants to end their appeal of the hearing officer's original decision. That original decision is no longer in effect and the appeal is no longer pending; the hearing officer issued a new decision after the Director reversed the first one. So the district court could not order Defendants "to abide by the [first] order," App. 7, as the complaint requests, without changing the past—it would have to nullify the second order and reinstate the first one. Such a request "is precisely the type of retroactive equitable relief prohibited under the *Ex [p]arte Young* doctrine." *Opala v. Watt*, 454 F.3d 1154, 1160 (10th Cir. 2006). Accordingly, the district court rightly concluded that the Eleventh Amendment precludes these retrospective remedies.

The Estate did request some prospective relief, though. In particular, the complaint requests an injunction ordering Defendants "to implement an impartial hearing system" and a declaration that they "continue to violate federal law" by not

---

[1] We do not separately consider whether *Ex parte Young* covers the Estate's request for attorney fees and costs under 42 U.S.C. § 1988. For Eleventh Amendment purposes, the district court could only award fees and costs "ancillary to prospective relief." *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 279 (1989). The availability of fees and costs, then, hinges on how we classify the other relief requested in the complaint.

doing so. App. 13. Unlike the relief discussed so far, these requests "seek[] to preclude only the future enforcement" of an allegedly unfair appeal process. *Hill*, 478 F.3d at 1260. That kind of relief presents "a run[-]of[-]the[-]mill *Ex parte Young* suit." *Id.* at 1258 & n.27. The problem is that, as explained below, Schultz's death negates the Estate's ability to seek this prospective relief.[2]

The district court called this problem mootness—the second ground for dismissal—but it is more accurately described as standing. Both doctrines are jurisdictional rules tied to Article III of the United States Constitution, which limits federal jurisdiction to "[c]ases" or "[c]ontroversies"; they ensure that federal courts decide only live disputes between adverse parties. *Brown*, 822 F.3d at 1163. Standing does so at a case's inception, asking "whether a plaintiff's action qualifies as a case or controversy when it is filed." *Id.* Mootness, on the other hand, kicks in once the case gets going, ensuring that a live dispute exists throughout the case and until "a court renders its decision." *Id.* If a party lacks standing or the mootness doctrine applies, federal courts lose jurisdiction to hear the case. *Id.* at 1164.

According to the district court, Schultz's death mooted the Estate's claims even if they were construed as seeking prospective relief. But mootness applies when an event that destroys the live dispute between the parties occurs *after* the plaintiff

---

[2] The district court construed *all* relief requested in the complaint as retrospective—even the forward-looking injunction and declaration just mentioned. We need not address its reasons for doing so, however, because the district court provided an alternative basis for dismissal "[e]ven if the claims [were] construed as seeking prospective relief." App. 106.

files suit. *Id.* at 1165. Here, Schultz died before the Estate filed the complaint, so any Article III problem caused by that event existed at the case's inception. As a result, the proper framework for this analysis is whether the Estate has standing.

Despite the district court's inaccurate phrasing, the Estate lacks standing to seek prospective relief for the same reason that the district court found that the case was moot. To have standing to seek prospective relief, "the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). The Estate's alleged injury stems from a violation of Schultz's right to a fair Medicaid review hearing. That violation was ongoing while Schultz lived and pursued her appeal. But Schultz is no longer with us; she no longer experiences whatever unfairness exists in Oklahoma's Medicaid appeals process. To state the obvious, "the civil rights of a person cannot be violated once that person has died." *Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743, 749 (10th Cir. 1980). And so, as the district court recognized, Schultz's injury also cannot reoccur: "once dead, [a plaintiff] is no longer under a real and immediate threat of repeated injury." *Tandy*, 380 F.3d at 1290. Thus, the Estate cannot allege the continuing or impending harm required to pursue prospective relief.

Naming the Estate as the plaintiff does not fix this standing problem. The Estate alleges no independent injury it suffers or suffered that would support Article III standing. Its sole attempt to do so is a string cite to cases recognizing that applicants for government benefits may have a constitutionally protected interest in

6

those benefits. *E.g.*, *Holbrook v. Pitt*, 643 F.2d 1261, 1278 (7th Cir. 1981) ("Applicants who have met the objective eligibility criteria of . . . government[] programs have been held to be entitled to protection under the due[-]process clause."). But Schultz—not the Estate—applied for Medicaid benefits, so any protected interest belonged to her. The Estate merely seeks to redress a violation of Schultz's rights on her behalf.[3]

Indeed, throughout this litigation, the Estate has recognized its representative role. In the complaint, the Estate acknowledges that it "is pursuing this action on behalf of . . . Schultz." App. 8. And in opposing Defendants' motion to dismiss, the Estate argued that federal law allows it to obtain retroactive Medicaid benefits "on h[er] behalf." 42 U.S.C. § 1396a(a) (34). It repeats this point on appeal: "§ 1396a(a)(34) even allows an estate of a deceased Medicaid applicant to file a Medicaid application *o[n] her behalf*." Aplt Br. 28 (emphasis added). Likewise, the Estate cites cases to show that *Schultz's* claims survive her death under Oklahoma law. For instance, in *Hopkins v. Oklahoma Public Employees Retirement System*, Oklahoma law provided that the plaintiff's claims survived his death. 150 F.3d 1155, 1159 (10th Cir. 1998). In so doing, the court recognized that the plaintiff's widow, like the Estate here, never "s[ought] relief for her own . . . interest" and was involved

---

[3] At times, the Estate also purports to sue on behalf of all Medicaid applicants in Oklahoma who are subject to the challenged appeals process. Of course, the Estate lacks standing to litigate the injuries of those unknown third parties. *See Collins*, 916 F.3d at 1312 (allowing third-party standing only if plaintiff has "close relationship" with third party who faces "a hindrance to [that party's] ability to protect [its] own interests").

7

in the case "solely from her role as the personal representative of [the] estate." *Id.* at 1159 n.4. In short, the Estate's own arguments confirm that it lacks standing to seek prospective relief.

Any doubt about that conclusion is resolved by *Pecha ex rel. Pecha-Weber v. Lake*, 700 F. App'x 840 (10th Cir. 2017) (unpublished). Although *Pecha* is nonprecedential, we find it persuasive. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential[] but may be cited for their persuasive value."). There, the plaintiff sought an order declaring him eligible for Medicaid benefits and awarding three months' retroactive benefits. 700 F. App'x at 842. The plaintiff died after filing suit, and a representative of his estate sought to substitute herself as the plaintiff. *Id.* The district court instead dismissed the case as moot, finding that the plaintiff's death "render[ed] prospective injunctive relief impossible." *Id.* (quoting App. 469). On appeal, the majority and concurring opinions clashed on whether to substitute the personal representative for the plaintiff even though the district court never ruled on the substitution motion. *Compare id.* at 843 (conducting "analysis as though [plaintiff]"—and not his estate—"were the sole plaintiff before us"), *with* 864 F.3d 1100, 1102–03 (Hartz, J., concurring) (criticizing majority's approach). But both opinions agreed that the plaintiff's death meant he could not show the continuing or impending harm required to obtain prospective relief. 700 F. App'x at 845 (majority opinion) ("[T]he dead are not susceptible to continuing or future harm; therefore, claims for prospective . . . relief brought by deceased plaintiffs ordinarily are moot."); 864 F.3d at 1103 (Hartz, J., concurring) (finding prospective relief moot

8

based on representative's "conce[ssion] that no future Medicaid benefits c[ould] be due"). For the concurrence, that was true even if the estate were substituted as the plaintiff. 864 F.3d at 1105.

The Estate's attempts to distinguish *Pecha* fall short. It first points out that there, the plaintiff died after suing, while here, Schultz died before the Estate filed suit. As explained above, that distinction affects which doctrine (standing or mootness) deprived the district court of jurisdiction but has no impact on *whether* the district court lacked jurisdiction. The district court here should have framed its analysis in standing terms, but the rationale it applied from *Pecha* holds true all the same—"the dead are not susceptible to continuing or future harm." 700 F. App'x at 845; *see also* 864 F.3d at 1105 (Hartz, J., concurring) ("Because [plaintiff] has died[,] there could be no continuing violation of federal law."). For that reason, the timing of the deaths here and in *Pecha* is not a meaningful distinction.

Nor is the difference between the requested relief. The Estate emphasizes that, unlike in *Pecha*, the complaint here seeks no determination of Schultz's Medicaid eligibility. That's true, but both cases still share the same Article III problem: the death ends any ongoing injury and makes it impossible for that injury to reoccur. Here, the injury is the denial of a fair hearing; there, it was the denial of benefits. In both cases, the applicant's death cuts off any chance at prospective relief in federal court. *Pecha* only strengthens our conclusion that the Estate lacks standing.

## CONCLUSION

The district court properly dismissed the Estate's complaint on Eleventh

Amendment and Article III grounds. The *Ex parte Young* exception to sovereign immunity does not allow for the retrospective relief sought in the complaint. And although the Estate requests some prospective relief, it has not alleged an ongoing or impending injury as required to support standing for that relief. Every injury the Estate alleges stems from one suffered by Schultz, who is no longer with us and thus not experiencing any harm. As such, the Estate lacks standing to seek the only relief that is not barred by the Eleventh Amendment. For these reasons, we affirm.

Entered for the Court


Gregory A. Phillips
Circuit Judge

10

20-6079, *Estate of Schultz v. Brown*

**HARTZ**, **J**., Circuit Judge, concurring

I concur in the judgment, but not all the reasoning of the majority opinion.

I fail to understand why the majority thinks that the Estate lacks standing to seek injunctive relief. The Estate seeks both declaratory and injunctive relief. The declaratory relief would state that the manner in which Medicaid appeals are handled by the state agency violates federal requirements of procedural due process. Armed with such a declaration, the Estate would attempt to set aside (in state proceedings) the adverse decision by the agency on the claim originally filed by Ms. Schultz for nearly $80,000 in unpaid Medicaid benefits. If that decision is set aside, the Estate would then seek a rehearing before the agency. It is at this point that the claim for injunctive relief comes into play, because the injunction sought by the Estate would require the agency rehearing to comply with the Estate's view of the demands of federal law. A failure to properly conduct the rehearing would violate the rights of the Estate in pursuing its claim.

Perhaps there is a reason why the Estate's interest in rehearing procedures is insufficient to provide standing. But I am puzzled by what that reason might be. The Estate is the successor to Ms. Schultz's claim for unpaid Medicaid benefits. After her death her rights to those benefits pass to the Estate. To obtain those benefits, the Estate must first set aside the adverse ruling against Ms. Schultz and then must prevail at a rehearing. As the Estate stated in district court, it "can still benefit from the outcome of this pending litigation by recovering Medicaid benefits through [the] Medicaid appeals

system if the system is conducted fairly and [in] compliance with federal law." Aplt. App. at 71.

The panel majority appears to think it dispositive that in the Medicaid proceedings the Estate is formally acting "on behalf" of the decedent. *See, e.g.*, 42 U.S.C. § 1396a(a)(34) (referring to application for benefits that were due to a deceased person as being "made on his behalf"). But, of course, any payment on the $80,000 claim would be made to the Estate. The Estate would suffer injury to a legally protected interest if it is subjected to an unlawful rehearing. It therefore has standing to seek to enjoin the state agency from conducting a rehearing in violation of federal law.

The problem with the injunctive relief sought by the Estate for itself is that such relief is barred by the Eleventh Amendment, as construed in *Green v. Mansour*, 474 U.S. 64 (1985), because ultimately all the Estate is seeking is a retroactive benefit. *See Pecha ex rel. Pecha-Weber v. Lake*, 864 F.3d 1100, 1103–05 (10th Cir. 2017) (Hartz, J., concurring). *Green* does not bar the possibility of injunctive relief for others. But if any injunctive relief for the Estate is barred, then it has no standing to seek that relief for others.