[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11804
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-01551-WCO

CAROL GAYLOR,
as the executor and representative of the
Estate of Gary Gaylor,

Plaintiff-Appellee,

versus

NORTH SPRINGS ASSOCIATES, LLLP,
a Georgia Limited Partnership,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 18, 2016)

Before ED CARNES, Chief Judge, HULL and MARCUS, Circuit Judges.

PER CURIAM:

North Springs Associates operates a shopping center in Sandy Springs, Georgia. When Gary Gaylor, who was disabled within the meaning of the Americans with Disabilities Act (ADA), visited the shopping center in February 2013, he encountered 74 architectural barriers that, he said, limited his use of the property. He sued North Springs, seeking injunctive relief under Title III of the ADA.

North Springs moved to dismiss the complaint on the ground that Mr. Gaylor lacked Article III standing to sue. North Springs contended that he was an ADA "tester" — someone who visits public accommodations for the purpose of verifying their compliance with the ADA. In support of that contention, North Springs pointed out that Mr. Gaylor had a lengthy history of filing ADA suits against places of public accommodation in Georgia, Florida, Mississippi, and Tennessee; that the shopping center was mostly vacant when he visited it; and that it was 70 miles away from his home in Cleveland, Georgia. According to North Springs, because Mr. Gaylor had no real intention to return to the shopping center except to test its compliance with the ADA, it was not likely that he would actually be injured in the future by the architectural barriers there, meaning he lacked standing to sue.

In response to North Springs' motion, Mr. Gaylor submitted an affidavit describing his previous visit to the shopping center and his plans to visit it in the

2

future. He stated that he had visited the shopping center on February 19, 2013, and had browsed at the shopping center's Big Lots store and purchased a snack there. He explained that he intended to visit the shopping center again on August 8, 2013 to "avail [himself] of the goods and services offered there" and to see whether North Springs had eliminated the architectural barriers. He also noted that the shopping center was just a short distance off Georgia Highway 400 South, and that he drove past it when visiting his family in Mableton, Georgia, and his doctors in Atlanta, Georgia. He declared in his affidavit that he "expect[ed] to frequent the [shopping center] at least 4–5 times a year when [visiting his] doctors' offices," particularly because the shopping center is just ten miles from them.

The district court denied North Springs' motion on November 12, 2013, finding that Mr. Gaylor's status as an ADA "tester" did not preclude his having standing to bring his claims, and that he had shown a sufficient likelihood that he would be harmed by the architectural barriers at the shopping center. A few months later, Mr. Gaylor moved for summary judgment as to all 74 of his claims. On September 9, 2014, the district court granted his motion as to 29 of the 74 barriers and entered an injunction ordering North Springs to eliminate those barriers within 90 days. As to the remaining 45 barriers, the district court found that fact questions prevented the entry of summary judgment. Instead of going to trial on the remaining claims, Mr. Gaylor moved the district court to dismiss them

3

and enter final judgment as to the 29 barriers for which it had granted him summary judgment. He also moved for attorney's fees. On April 2, 2015, the district court granted his motion for final judgment and, as part of that judgment, partially granted his motion for attorney's fees, ordering North Springs to pay Mr. Gaylor's lawyer $56,207.25 in attorney's fees and $5,810.25 in costs.

North Springs filed a notice of appeal on April 21, 2015. The notice specified that North Springs was appealing the district court's final judgment and the accompanying order. It did not mention the district court's order finding that Mr. Gaylor had standing to sue, nor did it mention the district court's order of injunctive relief. In May 2015, while the appeal was pending, Mr. Gaylor filed a motion seeking to have North Springs held in civil contempt because it had failed to make any of the improvements required by the injunction entered on September 9, 2014. Before the district court could rule on that motion, however, Mr. Gaylor died. We subsequently permitted Carol Gaylor, Mr. Gaylor's widow and the executor of his estate, to substitute as appellee in her capacity as executor of his estate.

The parties present three questions on appeal:

1. Do we have jurisdiction over the arguments raised in North Springs' appeal?

2. Does Mr. Gaylor's death moot the injunction?

3. Did Mr. Gaylor have standing to pursue his claims against North Springs?

4

We answer those questions below, starting with the first one.

North Springs' brief on appeal argues just two issues — (1) whether Mr. Gaylor had standing to sue, and (2) whether the injunction against North Springs is moot in light of Mr. Gaylor's death — and we have jurisdiction to consider both of them. Mrs. Gaylor contends that, because we may consider only those judgments and orders identified in an appellant's notice of appeal, see Fed. R. App. P. 3(c)(1)(B), and because North Springs noticed for appeal neither the district court's order finding that Mr. Gaylor had standing nor the order enjoining North Springs to eliminate the architectural barriers at the shopping center, we lack jurisdiction to review the district court's conclusions concerning standing and the injunction. But North Springs appealed from the final judgment against it, and

> [a] notice of appeal that names the final judgment suffices to support review of all earlier orders that merge in the final judgment under the general rule that appeal from a final judgment supports review of all earlier interlocutory orders, at least if the earlier orders are part of the progression that led up to the judgment rather than being separate from that progression.

16A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3949.4 (4th ed.) (footnote omitted); see Kong v. Allied Prof'l Ins. Co., 750 F.3d 1295, 1301 (11th Cir. 2014); Barfield v. Brierton, 883 F.2d 923, 930 (11th Cir. 1989). The order confirming that Mr. Gaylor had standing to sue and the order granting him injunctive relief were both indisputably part of the progression that led to the

final judgment in this case.  Accordingly, they fell within the scope of North Springs' notice of appeal and we may properly consider them.

North Springs' appeal of the injunction is also timely.  Subject to certain irrelevant exceptions, an appeal is timely if filed within 30 days of the judgment or order appealed from.  Fed. R. App. P. 4(a)(1)(A).  The district court entered final judgment in this matter on April 2, 2015, and North Springs appealed that judgment 19 days later, on April 21, 2015.  Mrs. Gaylor posits that the 30-day clock for appealing the injunction should run from the date the district court issued the injunction (September 9, 2014, in this case), not from the date the district court entered final judgment.  Under that view, a party in North Springs' shoes would have to take an interlocutory appeal within 30 days of the appeal's becoming available or permanently forego any appeal of the underlying order.  We rightly rejected a materially indistinguishable argument almost three decades ago.  See Hunter v. Dep't of Air Force Agency, 846 F.2d 1314, 1316–17 (11th Cir. 1988) (discussing the "numerous cases decided by our predecessor circuit and other circuits holding that the mandatory time periods for filing a notice of appeal established by Fed. R. App. P. 4 do not apply to interlocutory orders immediately appealable as of right under 28 U.S.C. § 1292(a)").  That decision forecloses Mrs. Gaylor's position here.

Mrs. Gaylor also asserts that we lack jurisdiction to consider her contempt motion, which is currently pending in the district court. She is correct but that is immaterial, since North Springs makes no arguments concerning that motion. To be sure, the propriety of a contempt sanction is sometimes related to the validity of an injunction, depending on whether the sanction is compensatory or coercive. See F.T.C. v. Leshin, 719 F.3d 1227, 1234 (11th Cir. 2013) (distinguishing between compensatory and coercive contempt sanctions). But the possible connection between the injunction in this case and any future contempt order does not mean that by reviewing the injunction against North Springs we are somehow exercising jurisdiction over the pending contempt motion.

Having dispensed with Mrs. Gaylor's jurisdictional arguments, we consider whether Mr. Gaylor's death mooted the injunction. When a solo plaintiff dies, any claims he had for injunctive relief become moot. See Rhodes v. Stewart, 488 U.S. 1, 4, 109 S. Ct. 202, 203 (1988); 13C CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3533.3.1 (3d ed.). As a result of Mr. Gaylor's death, the injunction against North Springs is moot and due to be vacated.

Even though Mr. Gaylor's death moots his claim for injunctive relief, it does not affect his status as a prevailing party for purposes of attorney's fees for the district court litigation. See Thomas v. Bryant, 614 F.3d 1288, 1294 (11th Cir. 2010). North Springs contends, however, that Mr. Gaylor should not prevail in this

7

case because he lacked Article III standing.  To have Article III standing, a

"plaintiff must have suffered an injury in fact," that is, "an invasion of a legally

protected interest which is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical."  Lujan v. Defenders of Wildlife, 504

U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992) (citations and quotation marks

omitted).  A plaintiff seeking injunctive relief must show not only that he was

injured in the past by the allegedly unlawful conduct, but that there is "a sufficient

likelihood that he will be [injured] by [such conduct] in the future."  Wooden v.

Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1284 (11th Cir. 2001).

The district court correctly concluded that our decision in Houston v. Marod

Supermarkets, Inc., 733 F.3d 1323 (11th Cir. 2013), controls the standing inquiry

in this case.  In Houston, as here, the plaintiff was an ADA tester seeking Title III

injunctive relief against a place of public accommodation that was located a

substantial distance from his home.  Id. at 1325–27.  There, as here, the plaintiff

submitted an affidavit stating that he had visited the place of public

accommodation in the past and would likely do so again — not only to test it for

ADA compliance, but also because it was located near his lawyers' offices and he

drove past it when visiting his lawyers.  Id.  In some ways, the plaintiff's affidavit

in Houston was actually less specific about the likelihood of future injury than is

Mr. Gaylor's affidavit in this case, because the affidavit in Houston specified

8

neither a date on which the plaintiff planned to return to the place of public accommodation, nor the number of times he planned to return there in the future. Id. at 1327.  Nevertheless, we held in Houston that the plaintiff had Article III standing to bring suit.  Id. at 1335–40.  Because there is no material difference between the facts in Houston and the facts in this case, we must conclude that Mr. Gaylor had Article III standing to sue North Springs for injunctive relief.

The district court's order requiring North Springs to remove certain architectural barriers from the shopping center is **VACATED** as moot.  The district court's judgment is otherwise **AFFIRMED**.