**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-6655

VERNON NORMAN EARLE,

Plaintiff - Appellant,

v.

SHREVES, C/O; J. RIVERA, Unit Manager for M-Unit at FCI Hazelton; R.
DOMAS, Unit Manager for L-Unit; D. WASHINGTON, Operating Lieutenant; MR.
GONOUNDY, [SIA] Special Investigative Agent; MR. BRECKON, Assistant
Warden of Operations; RACHEL THOMPSON, Administrative assistant/Remedy
Coordinator; JENNIFER SAAD, Warden of FCI Hazelton; K. KELLY, Captain of
FCI Hazelton; A. GYORKO, Case manager for Unit N-2 and for Plaintiff Directly;
C. T. PULICE, Case Manager Coordinator; J. F. CARAWAY, Mid-Atlantic
Regional Director; IAN CONNORS, National Inmates Appeals Administrator; MR.
SQUIRES, [SIS] special investigative Service Lieutenant,

Defendants - Appellees.

Appeal from the United States District Court for the Northern District of West Virginia, at
Elkins. John Preston Bailey, District Judge. (2:17-cv-00004-JPB-RWT)

Argued: December 9, 2020                    Decided: March 10, 2021

Before KEENAN and RICHARDSON, Circuit Judges, and TRAXLER, Senior Circuit
Judge.

Affirmed by published opinion. Senior Judge Traxler wrote the opinion, in which Judge
Keenan and Judge Richardson joined.

**ARGUED:** Olivia O'Hea, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. Erin K. Reisenweber, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, West Virginia, for Appellee. **ON BRIEF:** Erica Hashimoto, Director, Marcella Coburn, Supervising Attorney, Cynthia Anderson, Student Counsel, Matthew Angelo, Student Counsel, Connor Suozzo, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. William J. Powell, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellees.

TRAXLER, Senior Circuit Judge:

In this case, we are called on to determine whether the implied constitutional cause of action recognized by the Supreme Court in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), may be extended to include a federal inmate's claim that prison officials violated his First Amendment rights by retaliating against him for filing grievances. As we will explain, such an extension of *Bivens* is not permissible after *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), and *Tun-Cos v. Perrotte*, 922 F.3d 514 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 2565 (2020), and we therefore affirm the district court's judgment dismissing the action.

I.

Plaintiff Vernon Earle is serving a life sentence after being convicted in the District of Columbia of various charges including murder. In 2015, when the incidents involved in this case occurred, Earle was serving his sentence at a federal correctional institution in West Virginia.

According to the allegations of Earle's complaint, Earle's unit was locked down after an inmate punched Defendant Michael Shreves, a correctional officer. During the lockdown, Earle was denied hot meals and other privileges available to other inmates. He subsequently filed two grievances complaining about Shreves' conduct that precipitated the lockdown. Instead of handling the grievances in the usual manner, officers turned them over to Shreves, who directed another officer to place Earle and another complaining inmate in administrative detention in the Special Housing Unit (SHU). Earle remained in

the SHU for 30 days; despite multiple requests, he was never told why he had been placed in segregation.

Earle alleged that after he was released from the SHU, the warden told him he was placed in the SHU because of the grievances he filed. The warden stripped Earle of his prison job and transferred him to a different housing unit. Earle's new case manager unfairly increased Earle's custody classification points because Earle "love[d] to file." J.A. 21.

After exhausting prison remedies, Earle filed the complaint giving rise to this appeal. Earle alleged that Shreve and numerous other named defendants conspired to violate his First Amendment rights by retaliating against him for seeking resolution of his informal grievances. He also contended his placement in the SHU violated the Fifth and Eighth Amendments. The defendants moved to dismiss, or, in the alternative, for summary judgment. They argued that the First Amendment claim should be dismissed as an impermissible extension of *Bivens* after *Ziglar*. On the merits of the constitutional claims, the defendants contended they were entitled to summary judgment because Earle could not prove any constitutional violation and that they were entitled to qualified immunity. The defendants submitted affidavits from Shreve and others asserting that Earle was placed in the SHU pending an investigation into his grievances, which Shreve believed contained threating language.

The district court granted summary judgment in favor of the defendants. Without addressing whether a *Bivens* remedy was available, the court held that the First Amendment claim failed "because there is no First Amendment right to file grievances." J.A. 238. As

4

to the remaining claims, the district court held that Earle's evidence was insufficient to show a constitutional violation and that the defendants were therefore entitled to qualified immunity. This appeal followed.

On appeal, Earle does not challenge the district court's rejection of his claims under the Fifth and Eighth Amendments. Accordingly, the only claim at issue in this appeal is Earle's *Bivens* claim alleging a conspiracy to violate his First Amendment rights.

## II.

## A.

A person whose constitutional rights have been violated by a state official may bring an action seeking monetary damages against the official under 42 U.S.C. § 1983. "But § 1983 does not provide a cause of action against *federal* officials, and there is no analogous statute imposing damages liability on federal officials." *Tun-Cos*, 922 F.3d at 520.

In *Bivens*, the Supreme Court recognized for the first time an implied cause of action for damages against federal officers alleged to have violated a citizen's rights under the Constitution and permitted the plaintiff to seek compensatory damages from federal agents alleged to have violated the Fourth Amendment. *See* 403 U.S. at 396-97. In the years since *Bivens* was decided, however, the Supreme Court's approach to implied damage remedies has changed dramatically, to the point that "expanding the *Bivens* remedy is now a disfavored judicial activity." *Ziglar*, 137 S. Ct. at 1857 (internal quotation marks omitted).

Whether an implied damage remedy is available for a constitutional claim is logically "antecedent" to any question about the merits of the claim. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (internal quotation marks omitted). The implied-remedy

5

question does not go to the jurisdiction of the court, and it is sometimes appropriate for a court to assume the existence of a *Bivens* remedy and dispose of the claim by resolving the constitutional question. *Id.* at 2007. In this case, because this area of the law is in flux and guidance would be beneficial, we believe it is appropriate to determine whether a *Bivens* remedy is available for Earle's First Amendment claim. *See Bistrian v. Levi*, 912 F.3d 79, 89 (3d Cir. 2018) ("[T]hreshold questions are called that for a reason, and it will often be best to tackle head on whether *Bivens* provides a remedy, when that is unsettled.").

B.

As the Supreme Court explained in *Ziglar*, "it is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Ziglar*, 137 S. Ct. at 1856. Accordingly, in the years since *Bivens* was decided, the Court has proceeded cautiously. The Supreme Court has refused to extend *Bivens* numerous times, *see id.* at 1857, but has extended the *Bivens* remedy beyond the Fourth Amendment to only two new contexts. The Court has permitted a federal prisoner to pursue a *Bivens* claim raising an Eighth Amendment claim of deliberate indifference to serious medical needs, *see Carlson v. Green*, 446 U.S. 14, 18-19 (1980), and it has also permitted an employee of a member of Congress to bring a *Bivens*

6

action alleging gender discrimination under the Due Process Clause of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228, 248-49 (1979).[1]

Consistent with the Court's view that further expansion of the *Bivens* remedy was disfavored, the analytical framework established by the *Ziglar* Court places significant obstacles in the path to recognition of an implied cause of action. "First, courts must inquire whether a given case presents a 'new *Bivens* context.' If the context is *not* new . . . then a *Bivens* remedy continues to be available." *Tun-Cos*, 922 F.3d at 522–23 (quoting *Ziglar*, 137 S. Ct. at 1859). "But if the context is new, then courts must, before extending *Bivens* liability, evaluate whether there are 'special factors *counselling hesitation* in the absence of affirmative action by Congress.' If any such 'special factors' do exist, a *Bivens* action is not available." *Id.* at 523 (quoting *Ziglar*, 137 S. Ct at 1857).

1.

We first consider whether this case involves a "new context" for *Bivens* purposes. A case presents a new *Bivens* context "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Ziglar*, 137 S. Ct. at 1859. Rather than give a precise definition, the Court gave examples to illustrate the kinds of "differences that are meaningful enough," *id.*, to present a new context:

---

[1] In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court considered an inmate's *Bivens* claim alleging that federal prison officials violated the Eighth Amendment through deliberate indifference to the inmate's need for protection from other inmates. The Court acknowledged that the action was brought under *Bivens*, *see id.* at 830, 839, but did not question the propriety of the *Bivens* remedy in that case. The *Ziglar* Court did not include *Farmer* in its list of accepted contexts for *Bivens* claims. Our resolution of this appeal, however, does not depend on *Farmer*'s precise status after *Ziglar*.

7

A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

Although federal prison officials like the defendants in this case are already subject to *Bivens* claims asserting Eighth Amendment violations, the claim at issue here arises under the First Amendment and is governed by a very different body of case law. The Supreme Court has never recognized a First Amendment based *Bivens* remedy in any context. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (assuming without deciding that *Bivens* extends to a First Amendment free exercise claim); *Bush v. Lucas*, 462 U.S. 367, 368 (1983) (refusing to extend *Bivens* to a First Amendment speech claim brought by federal employee). We therefore have little difficulty concluding that, as Earle himself concedes, this case presents a new context for *Bivens* purposes. *See Tun-Cos*, 922 F.3d at 525 (concluding that plaintiffs' Fifth Amendment claims presented a new context in part because the claims "have no analogue in the Supreme Court's prior *Bivens* cases"); *Bistrian*, 912 F.3d at 95–96 (finding federal inmate's First Amendment retaliation claim to present a new *Bivens* context because the claim was "novel" "from the vantage of boundaries set by the Supreme Court").

2.

8

Because this case presents a new *Bivens* context, we must determine whether there are "special factors counselling hesitation" in implying a cause of action. *Ziglar*, 137 S. Ct. at 1857 (internal quotation marks omitted). "If any such special factors do exist, a *Bivens* action is not available." *Tun-Cos*, 922 F.3d at 523 (internal quotation marks omitted).

The focus of the special-factors inquiry is "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. Thus, to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Ziglar*, 137 S. Ct 1858.

> It is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation, with all of its burdens on some and benefits to others. It is true that, if equitable remedies prove insufficient, a damages remedy might be necessary to redress past harm and deter future violations. Yet the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide. Those matters include the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies. These and other considerations may make it less probable that Congress would want the Judiciary to entertain a damages suit in a given case.
>
> . . . . [I[f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III.

*Id.*

9

In this case, we believe there are several special factors that counsel hesitation. First, even without a *Bivens* cause of action, Earle is not completely without remedy. Like all federal inmates, Earle has "full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *see* 28 C.F.R. § 542.10(a) ("The purpose of the Administrative Remedy Program is to "allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."). While these alternate remedies do not permit an award of money damages, they nonetheless offer the possibility of meaningful relief and therefore remain relevant to our analysis.. *See Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988) (declining to imply a *Bivens* remedy for due process claims springing from the denial of Social Security benefits despite unavailability of compensatory damages under alternate remedial scheme); *Tun-Cos*, 922 F.3d at 526-27 ("The plaintiffs are correct that the protections provided by the INA do not include a money damages remedy and often do not redress constitutional violations that occur apart from removal proceedings. But this misses the point, for the relevant question is not what remedy the court should provide for a wrong that would otherwise go unredressed but instead whether an elaborate remedial system should be augmented by the creation of a new judicial remedy." (internal quotation marks and alteration omitted)).

Moreover, Earle's claim that he was placed in the SHU in retaliation for his grievance raises serious questions relating "to the reasoning, manner, and extent of prison discipline." *Bistrian*, 912 F.3d at 94. "Whether to place an inmate in more restrictive

10

detention involves real-time and often difficult judgment calls about disciplining inmates, maintaining order, and promoting prison officials' safety and security." *Id.* at 96. As the Third Circuit explained, prison officials must have discretion "to determine detention policies, to assess the endless variety of circumstances in which those policies may be implicated, and to decide when administrative detention is deserved and for how long." *Id.* at 94. Given the ease with which an inmate could manufacture a claim of retaliatory detention,[2] allowing a *Bivens* action for such claims could lead to an intolerable level of judicial intrusion into an issue best left to correctional experts. *See id.* ("The Bureau of Prisons, not the judiciary, has the expertise, planning, and the commitment of resources necessary for the difficult task of running a correctional facility.") (internal quotation marks omitted); *see also Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980) ("It is a rule grounded in necessity and common sense, as well as authority, that the maintenance of discipline in a prison is an executive function with which the judicial branch ordinarily will not interfere.") (citation and internal quotation marks omitted).

In sum, the recognition of a *Bivens* remedy in this case would work a significant intrusion into an area of prison management that demands quick response and flexibility, and it could expose prison officials to an influx of manufactured claims. And while the absence of a *Bivens* remedy forecloses any claims for monetary compensation, there are nonetheless other avenues available to inmates that offer the possibility of meaningful

---

[2] An inmate who engaged in misconduct could simply file a grievance related to his own action and then rely on that grievance to challenge any discipline subsequently imposed on him as retaliatory.

remedial relief for claims of retaliatory discipline. Under these circumstances, we believe that Congress, not the Judiciary, is in the best position to "weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 137 S. Ct. at 1858.

Accordingly, because we find special factors that counsel hesitation before expanding the *Bivens* remedy, we must reject Earle's attempt to extend the *Bivens* remedy to his claim that the defendants violated his First Amendment rights by retaliating against him for filing grievances. *See Tun-Cos*, 922 F.3d at 523 ("If any such special factors [counseling hesitation] do exist, a *Bivens* action is not available.") (internal quotation marks omitted); *see also Mack v. Yost*, 968 F.3d 311, 324-25 (3d Cir. 2020) (applying *Ziglar* to reject inmate's *Bivens* claim that prison officials stripped him of his prison job in retaliation or filing grievances); *Callahan v. Federal Bureau of Prisons*, 965 F.3d 520, 525 (6th Cir. 2020) (declining "to recognize a new *Bivens* action for free speech claims in prisons"); *Bistrian*, 912 F.3d at 96 (concluding that the special-factors analysis precludes extending *Bivens* to inmate's claim that prison officials placed him in administrative detention to retaliate for grievances filed by the inmate).

III.

For the foregoing reasons, we decline to expand the *Bivens* remedy to include the First Amendment retaliation claim asserted by Earle. Because Earle has no cause of action,

12

we hereby affirm the district court's judgment dismissing Earle's First Amendment retaliation claim.[3]

*AFFIRMED*

---

[3]     *See, e.g.*, *McMahan v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 964 F.2d 1462, 1467 (4th Cir. 1992) ("We of course have the power to affirm a judgment for any reason appearing on the record, notwithstanding that the reason was not addressed below.").