**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1578**

---

DARLENE FAYE LANCASTER, wife, heir and executor of the estate of her late husband, Commander Allen Lee Lancaster, CHC, USN (ret),

Intervenor/Plaintiff - Appellant,

and

ALLEN L. LANCASTER,

Plaintiff,

v.

THE SECRETARY OF THE NAVY; THE CHIEF OF NAVAL PERSONNEL; THE NAVY CHIEF OF CHAPLAINS,

Defendants - Appellees.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Elizabeth W. Hanes, District Judge.  (2:19-cv-00095-EWH-RJK)

---

Argued:  May 10, 2024                    Decided:  July 26, 2024

---

Before WILKINSON, NIEMEYER, and QUATTLEBAUM, Circuit Judges.

---

Vacated and remanded with instructions by published opinion.  Judge Quattlebaum wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

**ARGUED:** Arthur A. Schulcz, LAW OFFICE OF ARTHUR A. SCHULCZ, SR., CHAPLAINS' COUNCIL, PLLC, Leesburg, Virginia, for Appellant. Garry Daniel Hartlieb, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellees. **ON BRIEF:** Jessica D. Aber, United States Attorney, Richmond, Virginia, Lauren A. Wetzler, Civil Chief, Alexandria, Virginia, Joel E. Wilson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

_____

QUATTLEBAUM, Circuit Judge:

Lawsuits have lifespans, sometimes coinciding with those of the parties. This lawsuit began when a retired Navy chaplain sued several Navy officials in their official capacity, alleging discrimination in the Navy's promotion practices. It should have ended when the ex-chaplain died—after the Navy moved to dismiss the case but before the district court ruled on that motion. But neither the Navy nor the district court addressed how the plaintiff's death affected the district court's subject matter jurisdiction. Instead, the district court dismissed the case as res judicata. Then, after being named the executor of the ex-chaplain's estate, the ex-chaplain's widow sought to reopen the lawsuit and to substitute herself as the plaintiff, asking for a chance to amend the dismissed complaint. The district court denied all these requests. Only then was this appeal taken.

But we cannot reach the merits of the widow's post-dismissal motion since her husband's death mooted his claims for prospective relief and sovereign immunity would preclude retrospective relief, to the extent the ex-chaplain even sought it. Consequently, the district court lacked subject matter jurisdiction to dismiss the case on any other grounds or to rule on the widow's post-dismissal motion.

I.

This appeal stems from a longstanding dispute over the Navy's methods for promoting its chaplains. In this particular episode, an ex-chaplain, Allen Lancaster, sued the Secretary of the Navy, the Commander of the Naval Personnel Command and the Navy Chief of Chaplains, all in their official capacities. According to his amended complaint,

3

which he filed on September 25, 2019, Mr. Lancaster served as a Navy chaplain for twenty-one years before retiring in 2001 as a Commander, earlier than he would have retired had he been promoted to Captain. Mr. Lancaster alleged that he was not promoted due to "retaliation based on personal hostility and denominational prejudice." J.A. 33. For those reasons, he challenged the Navy's "personnel systems' procedures and practices." J.A. 35.

More specifically, the amended complaint raised four "counts." To begin, Mr. Lancaster claimed that the Navy's procedures permitted "illegal retaliation" against him by stymying his promotion for denominational reasons, but he specified no legal framework. J.A. 43–46. And lastly, he claimed that the Navy's promotion procedures and the retaliation they allegedly allowed violated the Religious Freedom Restoration Act, Pub. L. No. 103-141, 107 Stat. 1488 (1993) (codified at 42 U.S.C. § 2000bb to § 2000bb-4) ("RFRA"). In between, Mr. Lancaster brought two procedural counts. First, he sought to toll the six-year statute of limitations for civil actions against the United States provided in 28 U.S.C. § 2401(a). And second, he challenged the constitutionality of 10 U.S.C. § 613a, which privileges from disclosure in litigation the deliberations of selection boards responsible for promoting officers in the armed services.

The Navy officials moved to dismiss Mr. Lancaster's amended complaint on October 29, 2020. To discuss that motion and set a trial date, the district court held a status conference on July 20, 2021. Mr. Lancaster's lawyer notified the court on August 8 that he had presented a proposed second amended complaint to the defendants and was awaiting a response. On August 20, Mr. Lancaster's lawyer followed up with a second notice,

4

reporting that the Navy officials planned to oppose his motion for leave to amend, which he planned to file on or about September 8.

But Mr. Lancaster had passed away seven days earlier, on August 13. In light of that development, the Navy officials filed a suggestion of death on August 24, explaining that Mr. Lancaster's counsel had informed defendants of Mr. Lancaster's death one day prior. Acknowledging the death, the district court granted the Navy officials' long-pending and fully briefed motion to dismiss. Based on res judicata, the district court dismissed the amended complaint with prejudice on August 30, referring to several prior decisions in this longstanding dispute over the Navy's procedures for promoting chaplains.[1]

Though that dismissal was not appealed, on March 4, 2022, Mr. Lancaster's widow and the executor of his estate, Darlene Lancaster, tried to revive the case by filing a multifaceted motion. She moved the district court to reopen the case under Federal Rule of Civil Procedure 60(b), to substitute her for Mr. Lancaster as the plaintiff under Federal Rule of Civil Procedure 25(a)(1), and to permit her "to complete the Rule 15(a)(2) process"

---

[1] For context, the dispute began over twenty years ago in the federal district court for the District of Columbia. *In re Navy Chaplaincy*, 323 F. Supp. 3d 25, 31 (D.D.C. 2018). That court rejected the plaintiffs' systemic challenges to the Navy's promotion procedures and later severed several ad hoc claims for future resolution in various venues. *See id.* at 29; *In re Navy Chaplaincy*, No. 1:07-mc-00269 (D.D.C. Nov. 8, 2018), ECF No. 344. Purporting to bring such claims, twenty-seven plaintiffs jointly sued in the Eastern District of Virginia. The district court returned twenty-five of the plaintiffs to the D.C. district court, while two remained in the Eastern District of Virginia. *See Arnold v. Sec'y of Navy*, 2020 WL 1930393 (D.D.C. Apr. 21, 2020). One was ordered to refile a new action, which was dismissed as res judicata. *See Wilson v. Sec'y of Navy*, 2:19-cv-515 (E.D. Va. Jan. 21, 2020), ECF No. 11. The last plaintiff left was Mr. Lancaster, who was ordered to amend his complaint to include allegations pertinent only to him. That amended complaint is the one that the district court deemed res judicata.

5

for obtaining leave to file a second amended complaint. J.A. 299. The district court denied the motion in full on March 28, 2023. On May 25, Mrs. Lancaster timely appealed that order. *See* Fed. R. App. P. 4(a)(1)(B)(iii) (providing 60 days to appeal a judgment or order if one of the parties is "a United States officer or employee sued in an official capacity").

II.

To reach the merits of this appeal, we must first address—even if the parties do not—whether federal courts, including the district court, could properly exercise jurisdiction. *See Randall v. United States*, 95 F.3d 339, 344–45 (4th Cir. 1996) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it." (internal quotations omitted) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986))). We have the authority to discharge this duty since "a federal court always has jurisdiction to determine its own jurisdiction." *Appalachian Voices v. U.S. Dep't of the Interior*, 78 F.4th 71, 76 (4th Cir. 2023) (quoting *United States v. Ruiz*, 536 U.S. 622, 628 (2002)).

Until oral argument in this appeal, neither party nor the district court questioned whether Mr. Lancaster's death affected the district court's subject matter jurisdiction. No motion or memorandum was offered to the district court after Mr. Lancaster's death. And the issue was not discussed in the parties' initial appellate briefs. After raising jurisdictional concerns sua sponte at oral argument, we ordered supplemental briefing on whether Mr.

6

Lancaster's death deprived federal courts of jurisdiction based on the interplay of mootness and sovereign immunity. As those issues dispose of this appeal, we address them in turn.

A.

Federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender*, 475 U.S. at 541. Article III limits the federal judicial power to "Cases" or "Controversies." *Chafin v. Chafin*, 568 U.S. 165, 171–72 (2013); *United States v. Springer*, 715 F.3d 535, 540 (4th Cir. 2013). The case or controversy "must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)). A case or controversy dissipates when it becomes moot; that is "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). For mootness to occur, events transpiring while the matter is pending must "make[] it impossible for the court to grant any effectual relief to the plaintiff." *Id.* (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). Since mootness depends on the court's ability to grant effectual relief, it follows that mootness hinges on the type of relief sought. *Cf. City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (holding that a person previously subjected to a police chokehold lacked standing to seek injunctive relief, as opposed to damages, since he had not articulated a "real and immediate threat" of being once again subject to the challenged chokehold).

7

To determine the sort of relief sought, we rely on the operative complaint. *See Johnson v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 20 F.4th 835, 844–45 (4th Cir. 2021) (holding that a parent of a student "ordinarily must include in her federal complaint a request for compensatory education to avoid dismissal for mootness when the student no longer is enrolled in the defendant school system"); *Nestler v. Bd. of L. Exam'rs of N.C.*, 611 F.2d 1380, 1382 (4th Cir. 1980) (affirming the denial of leave to amend a complaint to add a damages claim after the district court dismissed as moot the operative complaint, which sought only declaratory and injunctive relief). As the "master of [his] complaint," Mr. Lancaster chose which remedies to pursue. *Johnson*, 20 F.4th at 844 (quoting *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 728 (4th Cir. 2021)). So our mootness analysis "is predicated on the contents of [his] federal complaint." *Id.* at 846.

In his first amended complaint, the operative one here, Mr. Lancaster sought several forms of prospective relief. Under the moniker "Declaratory Relief and Judgement," Mr. Lancaster requested a "declaration" that the Navy officials' actions "were illegal retaliation and denominational prejudice" and that the "promotion procedures are improper and unconstitutional tools and means of retaliation." J.A. 50–51. He also sought an "order" requiring the officials to "address and remove the penalties to [Mr.] Lancaster's career" and to "hold new promotion boards" using new procedures. J.A. 50–51. In addition, he requested an order "[e]njoin[ing] the defendants to remedy the harms to [Mr.] Lancaster's records" and to consider his performance as exemplary. J.A. 51. Pivoting from his retaliation claims, Mr. Lancaster also sought "declarations" and "orders" relating to his

8

challenges to the six-year statute of limitations for civil actions against the United States and to the statutory privilege for selection board proceedings. J.A. 51–52.

But Mr. Lancaster's death mooted his claims for prospective relief, whether injunctive or declaratory.[2] "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). The same goes for declaratory relief. *See Preiser*, 422 U.S. at 402 ("[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment*." (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941))); *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (per curiam) ("The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*." (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987))). After a person dies, he cannot suffer a continuing injury or benefit from prospective relief, ordinarily mooting prospective claims. *See Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 749 (4th Cir. 2018) ("It is axiomatic that a deceased litigant cannot enjoy prospective injunctive relief." (cleaned up)); 13C Charles A. Wright et al., *Federal Practice and Procedure* § 3533.3.1

---

[2] In light of this conclusion, we do not reach the question of whether Mr. Lancaster lacked standing to seek prospective relief after he had retired, albeit prematurely, from the Navy.

(3d ed. 2023).[3] Following that principle, when Mr. Lancaster died, he no longer stood to benefit from the various prospective "declarations" and "orders" he sought. *See Wicomico Nursing Home*, 910 F.3d at 749.

Though the mootness doctrine is tempered by some exceptions, none apply here. Conduct that is "capable of repetition, yet evading review" can save some matters from mootness. *Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011) (quoting *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). This constraint on mootness applies, however, only if the challenged conduct "is in its duration too short to be fully litigated prior to cessation or expiration" and "there is a reasonable expectation that *the same complaining party* will be subject to the same action again." *Id.* (emphasis added) (quoting

---

[3] Other circuits agree that a plaintiff's death ordinarily moots his claims for prospective relief. *See, e.g.*, *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 48–49 (1st Cir. 2006) (holding that a request for "equitable relief in the form of an order directing the defendants to provide the plaintiff with future installation work under reasonable terms" was moot since the deceased plaintiff and his estate "cannot conceivably benefit from such an order"); *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002) ("[Plaintiff's] claim for declaratory relief is also moot because Mr. Harrow cannot benefit from a declaration of Prudential's obligations under the plan."); *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997) (concluding that claims for injunctive and declaratory relief became moot after the plaintiff's death); *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1207 n.5 (10th Cir. 2002) ("Hall's death has rendered her claims for declaratory and injunctive relief regarding future disability benefits moot."); *Pecha ex rel. Pecha-Weber v. Lake*, 700 F. App'x 840, 841 (10th Cir. 2017) (holding that plaintiff's death mooted his request for an injunction ordering state official to determine him eligible for Medicaid benefits); *Gaylor v. N. Springs Assocs., LLLP*, 648 F. App'x 807, 811 (11th Cir. 2016) (per curiam) ("When a solo plaintiff dies, any claims he had for injunctive relief become moot.").

Similarly, the death of a prisoner petitioning for habeas relief moots his petition since the requested relief, release from imprisonment, ceases to be available. *See Eakes v. McCall*, 533 F. App'x 268, 268 (4th Cir. 2013); *Lockhart v. McCree*, 476 U.S. 162, 168 n.2 (1986) ("[T]he habeas petitioner . . . died prior to the District Court's decision, so his case became moot.").

*Wisc. Right to Life*, 551 U.S. at 462). Plainly, this exception does not apply to Mr. Lancaster's claims. Now deceased, Mr. Lancaster will never again be subject to the promotion practices he challenged.

Another exception to the mootness doctrine holds that a defendant's "voluntary cessation of a challenged practice" does not "deprive a federal court of its power to determine the legality of the practice" if there is a reasonable chance the practice will resume. *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). But here, there is no chance the challenged conduct will resume, at least as to Mr. Lancaster. So his claims are moot regardless of whether the Navy stopped engaging in the practices Mr. Lancaster challenged.

To sum up our analysis so far, Mr. Lancaster cannot benefit from the prospective relief he sought now that he has passed away. And for that same reason, this case cannot be revived by the mootness exception for conduct that is capable of repetition yet evading review or the exception for voluntary cessation. Therefore, Mr. Lancaster's claims for prospective relief are moot.

However, the specter of retrospective relief remains. "While the death of a party generally moots any claim for injunctive relief, death usually does not moot a claim for monetary compensation." *Cobell v. Jewell*, 802 F.3d 12, 23 (D.C. Cir. 2015); *cf. Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) ("Slade's complaint . . . requested both injunctive and monetary relief. The request for monetary relief is not moot even though Slade has been released from Jail because Slade retains a 'legally cognizable

11

interest' in the outcome of the case, *i.e.*, the return of money the Jail deducted from his inmate account. . . . Slade's claim for injunctive relief, however, is moot because he is no longer in pretrial detention."). Monetary compensation is less vulnerable to mootness because "[t]ypically, a substituted plaintiff, such as a decedent's personal representative, has a legally cognizable interest in the recovery of money damages owed to the decedent's estate." *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 49 (1st Cir. 2006). This damages distinction encompasses claims for backpay. *See Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 630 (1984) (determining that the plaintiff's death did not moot a case when the relevant statute authorized "an equitable action for backpay"); *Fraternal Ord. of Metro Transit Police Lab. Comm., Inc. v. Washington Metro. Area Transit Auth.*, 780 F.3d 238, 241 n.2 (4th Cir. 2015) (noting that the retirement of a plaintiff did not moot the claims brought on his behalf since "the disposition of this case could affect the district court's award of back pay").

But did Mr. Lancaster seek retrospective relief? The operative complaint asked for unspecified "[o]ther remedies as appropriate to compensate for the damage done." J.A. 51. In a broader catchall, the complaint requested "other such relief as may become apparent in the course of litigation." J.A. 52.[4] Later, in response to questions about mootness at oral argument, the Lancasters' lawyer stressed possible downstream economic effects of a declaration or injunction. In particular, he suggested that if a court were to declare that the Navy officials had retaliated against Mr. Lancaster and subsequently were to order the

---

[4] The amended complaint also sought litigation costs and attorney fees. But requests for such costs and fees cannot independently prevent a case from becoming moot. *See Int'l Bhd. of Teamsters, Loc. Union No. 639 v. Airgas, Inc.*, 885 F.3d 230, 237 (4th Cir. 2018) (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990)).

officials to reconvene a promotion board, the board would be likely to posthumously promote Mr. Lancaster, then allowing his estate to seek backpay. However, to ascertain whether Mr. Lancaster pursued retrospective relief, we question whether we can rely on the arguments of his lawyer on appeal about a backpay claim his estate might later seek to bring rather than his operative complaint. *See Johnson*, 20 F.4th at 844–45; *Nestler*, 611 F.2d at 1382. But even assuming the operative complaint's oblique reference to compensation could steer Mr. Lancaster's claims clear of the Scylla that is mootness, the claims would then run headlong into the Charybdis of sovereign immunity. In more modern parlance, Mr. Lancaster's claims are stuck between a rock and a hard place, both jurisdictional.

## B.

Sovereign immunity would bar any residual requests for retrospective relief. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Randall*, 95 F.3d at 345 (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). Even if the United States is not named as a defendant, "[a]n action against a federal agency or official will be treated as an action against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or compel it to act.'" *Portsmouth Redevelopment & Hous. Auth. v. Pierce*, 706 F.2d 471, 473 (4th Cir. 1983) (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)). Consequently, sovereign immunity bars monetary claims against officers in their official capacity since such suits effectively operate against

13

the sovereign itself.[5] *See Lewis v. Clarke*, 581 U.S. 155, 162 (2017) ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself."); *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 549 (4th Cir. 2014) ("State officials sued in their official capacities for retrospective money damages have the same sovereign immunity accorded to the State."); *Tanvir v. Tanzin*, 894 F.3d 449, 461 (2d Cir. 2018) ("A plaintiff may not sue a federal officer in her official capacity for money damages, because such suit seeks money from the federal government, and sovereign immunity would bar recovery from the federal government absent an explicit waiver."). Mr. Lancaster's operative complaint asserts claims against "U.S. Navy officials"—the Secretary of the Navy, the Commander of the Naval Personnel Command, and the Navy Chief of Chaplains—"in their official capacity only." J.A. 32. Therefore, sovereign immunity stands in its way.

But sovereign immunity can be waived. To that effect, "Congress has enacted certain statutes that both create a cause of action against the federal government and expressly waive the government's immunity from suit for those actions." *Strickland v. United States*, 32 F.4th 311, 363 (4th Cir. 2022). However, such a waiver "cannot be implied but must be unequivocally expressed." *Randall*, 95 F.3d at 345 (quoting *United*

---

[5] In contrast, the Supreme Court has recognized that sovereign immunity does not bar official capacity suits *for injunctive relief* against officers for acts that exceed their statutory or constitutional authority. *See Strickland v. United States*, 32 F.4th 311, 363–64 (4th Cir. 2022) (citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949)); *see also Larson*, 337 U.S. at 689 (restricting this rule to "suits for specific relief against officers of the sovereign"). But since Mr. Lancaster's requests for injunctive and declaratory relief have become moot, this limitation on sovereign immunity cannot keep his case alive.

*States v. Testan*, 424 U.S. 392, 399 (1976)). It also must be "strictly construed . . . in favor of the sovereign." *Welch v. United States*, 409 F.3d 646, 650–51 (4th Cir. 2005) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Therefore, "it is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim." *Id.* at 651. The Lancasters have failed to meet that burden.

The amended complaint does not refer to a single damages cause of action for which the federal government has waived its sovereign immunity. In its jurisdictional statement, the pleading cites to an immunity waiver contained in the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 702. But by its very terms, the APA's waiver "is limited to suits seeking relief 'other than money damages.'" *Randall*, 95 F.3d at 346 (quoting 5 U.S.C. § 702). It cannot sustain any requests for damages that might be read into Mr. Lancaster's complaint.

The complaint's first count, concerning "illegal retaliation," points to no cause of action at all, much less one that waives sovereign immunity. J.A. 43–46. It cites no statute, and only in passing does it assert that the challenged promotion procedures "are unconstitutional under the First and Fifth Amendments." J.A. 46. But even there, the amended complaint points to no cause of action that serves to waive sovereign immunity.[6]

---

[6] No federal statute provides an express cause of action against federal officers who have allegedly violated a person's federal constitutional rights. *See Earle v. Shreves*, 990 F.3d 774, 778 (4th Cir. 2021). Absent an express cause of action, the "logically 'antecedent'" question is "[w]hether an implied damage remedy is available for a constitutional claim." *Id.* In limited circumstances, the Supreme Court has recognized an

15

In its last count, the amended complaint refers to a statute, RFRA. If an actor of the federal government burdens a person's religious exercise in a manner that violates RFRA, that statute enables the aggrieved person to "assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). While we have yet to address the precise question, several other circuits have held that RFRA's reference to "appropriate relief" is too ambiguous to waive the federal government's sovereign immunity. *See, e.g.*, *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 841 (9th Cir. 2012); *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 744 n.4 (10th Cir. 2019) (per curiam); *Davila v. Gladden*, 777 F.3d 1198, 1209–10 (11th Cir. 2015); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006). And the Supreme Court and our court have concluded that same phrase "falls short of the unequivocal textual expression necessary to waive State immunity from suits for damages" when used in a related statute, the Religious Land Use and Institutionalized Persons Act, Pub. L. 106-274, 114 Stat. 803 (2000) (codified at 42 U.S.C. § 2000cc to § 2000cc-5). *Madison v. Virginia*, 474 F.3d 118, 131 (4th Cir. 2006); *see Sossamon v. Texas*, 563 U.S. 277, 285–88 (2011). True, the Supreme Court has recently

---

implied cause of action to recover damages from federal officers individually for some constitutional violations. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *see also Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980). *But see Ziglar v. Abbasi*, 582 U.S. 120, 121 (2017) ("[T]he Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009))). But Mr. Lancaster did not plead a cause of action under the *Bivens* line of cases, and for good reason. *Bivens* does not waive sovereign immunity, so it does not authorize damages suits against federal officers in their official capacity. *Radin v. United States*, 699 F.2d 681, 684–85 (4th Cir. 1983).

held that RFRA permits damages claims against federal officers in their individual capacity. *See Tanzin v. Tanvir*, 592 U.S. 43, 51–52 (2020). But "[t]he obvious difference" is that individual capacity claims do not implicate sovereign immunity. *Id.* With respect to official capacity claims, RFRA's use of the phrase "appropriate remedies" is too equivocal to constitute a waiver of sovereign immunity. And so, RFRA does not authorize damages against Navy officials in their official capacity.

The other two "counts" recited in the amended complaint fail to support a damages remedy at all. In what is styled "Count 2," the amended complaint argues that the six-year statute of limitations for civil actions against the United States, provided in 28 U.S.C. § 2401(a), is subject to equitable tolling. Meanwhile, "Count 3" challenges a statutory privilege against disclosure for selection board proceedings, *see* 10 U.S.C. § 613a, directly under the First and Fifth Amendments. Neither of these challenges provide a basis for damages, let alone one that could withstand sovereign immunity.

Though never mentioned in Mr. Lancaster's operative complaint, Mrs. Lancaster now invokes 10 U.S.C. § 1558 in an attempt to bypass sovereign immunity. That statute makes available judicial review over a "challenge [to] an action or recommendation of a selection board" only after the challenge has been administratively exhausted. 10 U.S.C. § 1558(f). The statute says nothing about authorizing damages claims against a sovereign or its officers. *See id.* This limitation on judicial review is a far cry from the sort of explicit statement required to waive sovereign immunity.

Therefore, to the extent the operative complaint even sought retrospective relief against federal officers in their official capacity, the Lancasters have not met their burden

17

of showing "an unequivocal waiver of sovereign immunity." *Welch*, 409 F.3d at 651.[7] That leaves only the requests for prospective relief, which, as previously discussed, became moot when Mr. Lancaster passed away.

## III.

Some lawsuits die with the person bringing them. When Mr. Lancaster died, the district court lost subject matter jurisdiction over his lawsuit. Mr. Lancaster's death mooted his requests for injunctive or declaratory relief. To the extent any claims for retrospective relief can be read into the operative complaint, sovereign immunity would bar them since the Lancasters have not demonstrated a waiver of that immunity. Consequently, the district court should have dismissed the case without prejudice for lack of subject matter jurisdiction, not with prejudice on res judicata grounds. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for . . . [a] defect in subject matter jurisdiction . . . must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of

---

[7] Based on the record before us, it appears that at no point has either Lancaster argued that sovereign immunity was waived under the Back Pay Act. That act waives sovereign immunity only when an employee of an agency establishes, among other things, that an "appropriate authority" has found in the context "of a timely appeal or an administrative determination" that under applicable law the employee was "affected by an unjustified or unwarranted personnel action." 5 U.S.C. § 5596(b)(1). Since the Lancasters have never mentioned the Back Pay Act, they have not pointed to any such finding by "an appropriate authority," and the district court could not itself act as that authority. *See Strickland*, 32 F.4th at 369–71. More importantly, though, they forfeited any arguments predicated on the act. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).

a claim on the merits."). Likewise, the district court continued to lack subject matter jurisdiction when it denied Mrs. Lancaster's request for relief from that res judicata dismissal under Rule 60(b).

Therefore, the district court's judgment of dismissal and its subsequent judgment denying relief under Rule 60(b) are both vacated, and the matter is remanded with instructions to dismiss the case without prejudice for lack of subject matter jurisdiction.

*VACATED AND REMANDED WITH INSTRUCTIONS*